**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William J. DONOHO, Defendant-Appellant.**

**No. 17671.**

United States Court of Appeals Sixth Circuit.

Jan. 24, 1968.

Certiorari Denied April 8, 1968.

See 88 S.Ct. 1263.

John J. Hooker, Nashville, Tenn., for appellant, Ira E. Parker, III, Quentin Housholder, Nashville, Tenn., on the brief, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., of counsel.

Rollie L. Woodall, Nashville, Tenn., for appellee, Gilbert S. Merritt, Jr., U. S. Atty., Alfred H. Knight, III, Asst. U. S. Atty., Nashville, Tenn., on the brief.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

Appellant was convicted by a jury on all five counts of an indictment charging him with wilfully subscribing to false income tax returns for the calendar years 1957, 1958, 1960, 1961 and 1962, in violation of 26 U.S.C. § 7206(1). He was sentenced to fifteen months' imprisonment on each count, to run concurrently,

and to a fine of five hundred dollars on each count.

Appellant had been previously tried for the same offenses, but that trial resulted in a mistrial.

Donoho was a high-ranking officer on the Nashville police force. The Government proved its case by the specific item method. It offered evidence tending to prove that payoffs were made by law violators to Donoho, for police protection, during the indictment years. It was stipulated that none of the income reported in his tax returns was derived from such sources and his returns did not reflect the receipt of any such income. The law violators were engaged in the operation of houses of prostitution, professional gambling, and the illegal sale of intoxicating beverages.

Donoho took the witness stand and denied that he had ever taken payoffs or protection money. He then offered to introduce in evidence a computation of his net worth and expenditures for the years 1960 and 1961, and evidence to support these figures, but the Court refused to admit them into evidence. This is the principal error relied upon in the appeal.

Had this occurrence taken place at the first trial, we think there might have been some substance to the contention. The Government had filed bills of particular stating that its method of proof would be by specific items of income not reported on Donoho's income tax returns for the years in question, and by the expenditures method for the years 1960 and 1961. Since the Government then planned to use the expenditures method, it might have been competent for Donoho to offer his net worth computation as part of his defense to counts 3 and 4. United States v. Moody, 339 F.2d 161 (6th Cir. 1964).

After the first trial, however, the posture of the case changed. A stipulation was entered into as follows:

"The parties hereby stipulate that the attached Exhibits 'A', 'B', 'C', 'D', and 'E' are accurate copies of income tax returns filed by William J. Donoho and wife for the years 1957, 1958, 1960, 1961 and 1962, respectively and that the attached Exhibit 'F' is a Certificate of Assessments and Payments for the same years accurately reflecting the tax assessed to and paid by William J. Donoho and wife. The taxpayers reported Adjusted Gross Income on their tax returns for these years, as follows:

| 1957 | $ 10,557.98 |
| 1958 | 11,295.31 |
| 1960 | 18,434.08 |
| 1961 | 18,962.94 |
| 1962 | 20,262.44 |

"The parties further stipulate that none of the income reported on these tax returns by the defendant William J. Donoho and wife came from law violators in the form of protection payments and the tax returns do not reflect receipt of any such income by the defendant."

The Government filed an amended bill of particulars, stating that its method of proof would be by specific items of income on all of the counts of the indictment.

It will be observed that the parties stipulated that the Certificate of Assessments and Payments "accurately" reflected the tax assessed to and paid by Donoho for the years in question and that none of the income reported on his tax returns "came from law violators in the form of protection payments and the tax returns do not reflect receipt of any such income by the defendant."

The stipulation thus narrowed the issues and left it to the jury to decide whether to believe the testimony of the law violators that they paid substantial sums to Donoho for police protection, which sums admittedly were not reported in the tax returns, or to believe Donoho's denials. By its verdict it is apparent that the jury credited the testimony of the law violators and disbelieved the testimony of Donoho.

■ To have permitted Donoho to offer net worth computations for the two years in question, would have been inconsistent with the stipulation that his returns accurately reflected the tax assessed by and paid by him, except for protection money. At most, it would constitute an attempt by Donoho to corroborate his denials by his own self-serving testimony regarding his assets and expenditures. It would introduce extraneous matters in evidence and might confuse the jury.

Donoho relies on *Moody*, but this case did not involve a stipulation as to the accuracy of the tax assessments and payments. In *Moody* the Government did not prove its case by specific items, but by a bank deposits computation. In our case no tax would be owing unless the jury found that the defendant received and accepted the graft money.

■ Donoho further contends that the court erred in not permitting his counsel to comment in his argument to the jury on the Government's changing its bill of particulars from expenditures method of computation to specific items in connection with two counts of the indictment. His theory is that the jury would be entitled to draw an unfavorable inference against the Government for "failure to produce a witness whose testimony would shed light on a particular transaction." The trouble with this contention is that the Government did not withhold any evidence. It merely changed its method of proof to conform to the stipulation. Furthermore, the Government would have difficulty in proving defendant's expenditures without his cooperation.

Finally, appellant contends it was error to admit the testimony of Albert "Mickey" Kreitner, a law violator, that he made protection payments to Sergeant Morgan Smith of the Nashville police force, in the amount of six hundred dollars, in 1957 and 1958, and that Smith told him [Kreitner] that Donoho would receive one-half of the money. It is appellant's position that this was hearsay evidence.

■ There was testimony of Lula Gray, the owner of a Nashville house of prostitution, that she paid Donoho one hundred fifty dollars per month, beginning in August, 1957, and continuing through August, 1958, to prevent the police from raiding her place, and that some of the payments were made personally to Donoho and some were collected for Donoho by Sergeant Smith. William Frazier, a numbers operator, testified that he paid Donoho one hundred dollars per month during the years 1957, 1958, 1959, 1960 and 1961, and that Smith on occasions would pick up these payments for Donoho, including one hundred dollars for himself. We think the testimony of Gray and Frazier was sufficient to justify the District Judge's ruling that Kreitner's testimony was admissible on the ground of vicarious responsibility.

The Government contends that we should affirm in any event, since the errors charged do not relate to all of the counts of the indictment and the prison sentences imposed were concurrent. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Jett, 352 F.2d 179 (6th Cir. 1965). The fines imposed, however, were cumulative. Since we have found no prejudicial error in the conviction, it is unnecessary for us to rule on this point.

Affirmed.