UNITED STATES of America,
Plaintiff-Appellee,

v.

Leslie E. JETT, Defendant-Appellant.

No. 16105.

United States Court of Appeals
Sixth Circuit.

Oct. 26, 1965.

John J. Hooker, Jr., and William R. Willis, Jr., Nashville, Tenn., Alfred H. Knight III, Nashville, Tenn., on brief; Hooker, Hooker & Willis, Nashville, Tenn., of counsel, for appellant.

Carrol D. Kilgore, Asst. U. S. Atty., Nashville, Tenn., James F. Neal, U. S. Atty., Nashville, Tenn., on brief, for appellee.

Before WEICK, Chief Judge, and MILLER and EDWARDS, Circuit Judges.

WEICK, Chief Judge.

Appellant Jett has appealed from a judgment of conviction on three counts of a five count indictment charging him with violation of the income tax laws. Trial by jury was waived and the case was tried by the District Judge. Findings of fact were also waived.

Counts 1 and 3 of the indictment charged Jett with income tax evasion for the calendar years 1960 and 1961, respectively, in violation of 26 U.S.C. § 7201. The method of proof with respect to these two counts was by net worth. Counts 2, 4 and 5 charged Jett with filing false returns for the calendar years 1960, 1961 and 1962, in violation of 26 U.S.C. § 7206 (1). The method of proof of these three

counts was by specific items omitted from his income tax returns.

The District Court found the defendant guilty on counts 1, 3 and 4 and not guilty on counts 2 and 5. Count 2 involved specific items of alleged graft. The Court had a lingering doubt of guilt concerning count 2 because of conflicting evidence and the reputation of some of the parties. Count 5 involved specific items of income allegedly received from a partnership. With respect to this count the Court found that although Jett was a silent partner, the evidence did not disclose the amount of income received. He sentenced the defendant to eighteen months' imprisonment on counts 1, 3 and 4, to run concurrently.

The principal point raised on appeal was that the District Court erred in denying defendant's motion for judgment of acquittal. In considering this issue we must view the evidence together with inferences properly deducible therefrom, in the light most favorable to the Government and determine whether the judgment of conviction is supported by substantial evidence. Ross v. United States, 197 F.2d 660 (6th Cir. 1952); Battjes v. United States, 172 F.2d 1 (6th Cir. 1949).

Jett won nomination for the office of sheriff of Davidson County, Tennessee, at the primary election held on March 31, 1960. He was elected sheriff at the general election and took office on September 1, 1960. The increases in his net worth occurred during the political campaign and the tenure of his office.

In 1960 Jett reported taxable income of $1,212.43. The Government's computation of taxable income revealed that he received taxable income for that year of $9,175.75, resulting in an understatement of $7,963.32. For 1961 his reported taxable income was $6,547.97. His actual income as computed by the Government was $12,514.39 and the understatement was $5,966.42. The Government's net worth determinations and computations of taxable income appear in Appendices A and B.

There was no dispute as to the assets and liabilities shown in the Government's net worth determination of taxable income except as to an item of $200 for a horse, which was inconsequential. Jett disputed the following items shown in the computation of taxable income under "Personal Expenditures":

| | | |
|---|---|---|
| Support of mother-in-law | (1961) | $ 750.00 |
| Payments to W. E. Belcher | (1960) | 700.00 |
| Repairs on boat (Hargrave) | (1961) | 1,123.30 |

These disputed items will be considered later.

Jett further disputed the likely sources of income asserted by the Government involving alleged gifts made to him during the political campaign and after he became sheriff, which gifts he either used to pay for living expenses or deposited in his wife's savings account from time to time. These were not included in his income tax returns. The Government also claimed that he received graft or pay-offs.

Jett was interviewed by Special Agents of the Internal Revenue Service on at least three occasions in 1962. He was questioned concerning his assets, liabilities and income. Special Agent Mask, who was in charge of the investigation, testified as to conditions in Davidson County and Nashville which existed prior to Jett's election and continued under his administration. Wide open gambling was being conducted in the area and sales of intoxicating beverages by the glass were made, all in violation of Tennessee laws. Mask further testified on cross-examination by Jett's counsel as to hearsay evidence of pay-offs to Jett.

Mask testified that in his initial interview with Jett on July 14, 1962, Jett told him that Paul Shelton had made a cash

gift to him in 1960 for living expenses in the amount of $1,000. Shelton had been employed as a patrolman by Jett's predecessor in office. When Jett took office he not only retained Shelton but promoted him over the offices of corporal and sergeant to lieutenant. Jett did not include the $1,000-item in his 1960 income tax return.

Jett further told Mask that except for the Shelton payment he received no additional gifts in 1960 and 1961. Later, when confronted with the Government's net worth calculations and the necessity of showing receipt of nontaxable income to account for the increases in net worth, he furnished the Government with a list of other alleged contributors. Appendix C, prepared by the Government, contains the list of personal gifts claimed by Jett and the extent to which the Government claims he made proof of them at the trial. It lists campaign contributions paid direct to Jett, campaign contributions paid to Jett's campaign treasurer, and other payments to Jett. The government interviewed each available person shown on the list and subpoenaed such person to testify at the trial.

Appendix C lists Ernest Jones as making two gifts of five hundred dollars each to Jett, both of which were made in cash. The first alleged gift was made during the campaign in 1960 and the second was made at Christmas in 1961. Jones was the supplier of gasoline and oil for the automobiles in the sheriff's patrol. He testified that the reason he made the gifts was so that he might retain the oil and gasoline business.

The item of seven hundred fifty dollars shown for the support of the mother-in-law in 1961 did not involve cash. Rather, it consisted of the value of vegetables on the verge of spoiling, which a supplier of the county permitted Jett to take without charge therefor, each week, and which were delivered to the mother-in-law by Mrs. Jett.

Relative to the item of seven hundred dollars, representing payments to W. E. Belcher, there was evidence tending to prove that prior to Jett's election as Sheriff he was Civilian Defense Director; that he sold a generator belonging to the Government to Belcher for two hundred dollars; and that after becoming sheriff, Jett endeavored to secure the return of the generator so that he could place it back in inventory, but that Belcher wanted seven hundred dollars for it. Jett gave Belcher two hundred dollars and the generator was returned to him. Later Belcher demanded the balance of five hundred dollars, which was sent to him by Jett.

Jett's version of the transaction was that he merely loaned the generator to Belcher, who gave him the two hundred dollars as a guaranty that he would return it on demand; that he left the two hundred dollars in his desk in the Civilian Defense office; and that he paid the additional five hundred dollars to Belcher to compensate him for services which he rendered Jett during the campaign.

On cross-examination Belcher testified:

"Q And Sheriff Jett gave you five hundred dollars for working for him in that campaign, did he not?

"A Well, he said we would call it that. He said he felt like he owed me something."

With reference to the boat, there was evidence that Jett was using the boat frequently and wanted to purchase it in the name of another person. There was no evidence that he paid for the repairs on the boat in the amount of $1,123.30. The item should therefore be eliminated from the calculations with respect to personal expenditures.

In our opinion there was substantial evidence to support the conviction on counts 1 and 3 of the indictment. Even if Jett were allowed credit for all disputed items, there still remained a substantial understatement of income for the years 1960 and 1961.

Jett claimed that in not reporting the gifts which he used for living expenses or deposited in his wife's savings account, he relied on the advice of his attorney, Charles C. Morrow. Mr. Morrow was a

classmate of Jett in law school. He saw Jett in the hotel where the campaign headquarters were located, and while in the hall was asked by Jett whether campaign donations were taxable. Morrow stated that he would look into the matter and later advised Jett that gifts to assist in his political campaign were not taxable income.

Upon being questioned by the Court, Morrow stated that there was no discussion with Jett about using campaign money for personal expenses. He did not recall that Jett told him that he was using any of the funds for personal use.

Jett testified that he told the lawyer he was using the money for his own personal use and was living off it. Since the testimony of Morrow conflicted with that of Jett, the District Court could, as he obviously did, resolve the conflict by crediting Morrow over Jett.

We are certain that Morrow, upon investigating the law, could have found no legal support for Jett's claim that funds contributed to a political campaign and diverted for personal use, were nontaxable.

Furthermore, Jett would have no right to rely on the advice of an attorney unless he made full disclosure of the pertinent facts. United States v. Baldwin, 307 F. 2d 577 (7th Cir. 1962). Jett did not make such disclosure.

Jett further contended that the Government failed to prove willfulness. He urged that he believed that the gifts and campaign contributions were not taxable. He stated that the law on this subject was not established until the case of O'Dwyer v. Commissioner, 266 F.2d 575 (4th Cir. 1959) was decided, which was only one year before his campaign.

The law was established long before O'Dwyer. Paschen v. United States, 70 F.2d 491, 500 (7th Cir. 1934); Reichert v. Commissioner, 19 T.C. 1027 (1953) aff'd on other grounds 214 F.2d 19 (7th Cir.), cert. denied 348 U.S. 909, 75 S.Ct. 294, 99 L.Ed. 713.

In 1939 there was in effect Revenue Ruling I.T. 3276, reported in 1939–1 Cum.Bull. 108, which held that:

"[A] political gift received by an individual or by a political organization is not taxable to the recipient."

In 1954 another Revenue Ruling was adopted holding that campaign funds which are diverted and used for personal use, constitute taxable income. Rev.Rul. 54–80, 1954–1 Cum.Bull. 1. This later ruling modified I.T. 3276 to the extent that it was inconsistent. We agree with the Seventh Circuit in O'Dwyer that these two revenue rulings are not necessarily inconsistent and that the later ruling was declaratory of judicial interpretation of existing law. I.T. 3276 does not hold that the personal use of campaign contributions resulted in no tax liability. Jett could not have relied on I.T. 3276 in 1961 when he filed his 1960 income tax return because Rev.Rul. 54–80, 1954–1 Cum.Bull. 11 supplanted it in 1954. The later ruling was thus in force for about seven years prior to the filing of Jett's 1960 return.

■ Since the statutes penalize the willful attempt to evade income taxes, proof of a willful purpose to evade the tax is necessary and an actual bona fide misconception of the law will not result in criminal liability. Battjes v. United States, 172 F.2d 1 (6th Cir. 1949).

■ Bearing on the subject of willfulness, the District Court had the right to consider the inconsistent statements given by Jett to the Special Agents, the consistent understating of income in substantial amounts for both of the tax years, the fact that understatements exist even if the alleged gifts and campaign contributions received by Jett were eliminated from the computations, the fact that no campaign was conducted in 1961, and the fact that there was an understatement for that year of about $6,547.-39. Jett's auditor arrived at a figure of $3,193.12.

In our judgment there was substantial evidence of willfulness.

Count 4 was a specific item charge which covered the alleged gift at Christmas in 1961 of five hundred dollars to Jett by Jones, who was the supplier of gas and oil. There was no campaign in progress at that time. Jones testified that he made the gift in order to retain the gas and oil business. The following year when Jones lost the business because the new Metropolitan Government assumed the functions of the sheriff's patrol, Jones made a gift at Christmas to Jett of wine glasses, costing about fifteen dollars. The District Court did not err in treating this item of five hundred dollars as taxable income.

The sentences on all three counts were to be served concurrently and were for less than could have been imposed on one count. Even if the evidence were insufficient to support counts 1 and 2 (which it was not) we would still be required to affirm the judgment because no error exists with respect to count 4.

Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

We find no prejudicial error in the record.

Affirmed.