SHERWIN H. RAYMOND AND ELIZABETH RAYMOND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Raymond v. Commissioner
Docket No. 2872-75.
United States Tax Court
T.C. Memo 1983-607; 1983 Tax Ct. Memo LEXIS 180; 46 T.C.M. (CCH) 1556; T.C.M. (RIA) 83607; September 27, 1983. John J. O'Toole and Andrew P. Fradkin, for the petitioners. Patrick E. Whelan, for the respondent. HAMBLEN
MEMORANDUM FINDINGS *181 OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and imposed additions to tax under section 6653(b) [1] as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1970
$44,730.26
$22,981.46
1971
19,230.83
11,106.21
1972
209,920.27
104,960.13
1973
109,787.06
54,893.53
By amended answer, respondent redetermined the deficiencies and additions to tax as follows, reducing the deficiency and addition to tax for 1970 and increasing the deficiencies and additions to tax for 1971, 1972, and 1973: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1970
$12,173.20
$6,789.50
1971
23,316.40
11,658.20
1972
235,299.29
117,649.65
1973
202,291.71
101,145.85
After concessions, the issues for decision are: 1. Whether petitioners had unreported income in the amounts determined by respondent for the years in issue. 2. Whether petitioners realized a long-term capital gain upon the sale of stock in the Development Corporation of America in 1972. *182 3. Whether any part of the underpayment of petitioners' Federal income tax for each of the years in issue was due to fraud on the part of petitioner Sherwin H. Raymond. [2]
4. Whether assessment and collection of the deficiency determined for 1970 is barred under section 6501. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Sherwin H. Raymond (hereinafter petitioner) and Elizabeth Raymond, husband and wife, resided in Ridgefield, New Jersey, when they filed their 1970, [3] 1971, 1972, and 1973 joint Federal income tax returns with the Internal Revenue Service and when they filed their petition in this case. Petitioner was licensed to practice medicine in New Jersey on June 5, 1956. Sometime in or about 1960, he began performing illegal abortions. *183 At the same time, petitioner was engaged in the general practice of medicine in Union City, New Jersey. Petitioner was arrested on an abortion charge for the first time in 1963. Prior to 1967, petitioner was arrested five other times for performing illegal abortions. In 1967, petitioner was convicted of performing illegal abortions in New Jersey and was sentenced to from five to seven years imprisonment. He was incarcerated on December 11, 1967, and released on parole on December 11, 1969. In conjunction with his conviction for performing abortions, petitioner's license to practice medicine in New Jersey was revoked. When he was released from prison, he applied for the reinstatement of his license. On September 6, 1973, the New Jersey Board of Medical Examiners advised him that he had qualified to be relicensed, and he resumed the practice of medicine in New Jersey on November 1, 1973. After his release from prison, petitioner was on parole for six years. He was required to visit his parole officer twice weekly, who insisted that petitioner do something to occupy his time. Since petitioner's medical license remained suspended during nearly the first four years of his *184 parole period and he could not practice, petitioner took a number of courses at a local college. He also took a real estate course at Rutgers University and passed the examination to obtain a New Jersey state Real Estate Commission, enabling him to act as a salesman for a New Jersey realty firm. [4] In addition, he took a manpower training course as a machinist and worked as a maintenance mechanic for approximately one year. During the years in issue, petitioner's wife was employed as an order clerk for a magazine. Sometime during this period, she was laid off and applied for and collected unemployment insurance. On September 19, 1974, pursuant to a warrant issued by the U.S. District Court, petitioner was arrested for the unlawful possession of firearms. An indictment was subsequently returned against petitioner in the U.S. District Court for the District of New Jersey charging him with, among other things, the sale and illegal possession of firearms. [5] Petitioner pleaded guilty to, and was convicted of, the possession charge only, and he was sentenced to eight years imprisonment and a $10,000 fine. *185 During the years in issue, neither petitioner nor his wife received any gifts, legacies, inheritances, or devises. In the notice of deficiency, dated January 3, 1975, respondent determined that petitioners had the following amounts of unreported income using the bank deposits and cash expenditures method and unreported dividend income for the years in issue: Unreported
Unreported Income
Dividend Income
1970
$92,369.81
1971
44,948.36
1972
212,820.68
3,740
1973
180,815.36
2,098
Respondent determined for the years in issue that petitioners had the foregoing amounts of unreported income using the bank deposits and cash expenditures method of reconstructing income because petitioners did not furnish any financial records. In so doing, respondent has taken and treated as income all the deposits and cash expenditures whose source petitioners have failed to explain to his satisfaction. In addition, respondent determined that petitioner failed to report capital gain income in the amount of $121,764.64 for 1972. [6] Respondent also disallowed partnership loss deductions that petitioners claimed for 1972 and 1973 in the respective amounts of $3,980.85 *186 and $2,946.78. [7] Finally, respondent determined that petitioners were liable for the addition to tax for fraud under section 6653(b) for the years in issue. Subsequent to the mailing of the notice of deficiency and the filing of his original answer herein, respondent discovered that petitioners had additional unexplained deposits and expenditures.Consequently, respondent filed an amended answer in which he alleged that petitioners had unreported income in the following *187 amounts for the years in issue: Unreported income
1970
$36,243.00
1971
52,526.97
1972
248,765.43
1973
312,974.29
Pursuant to the stipulation filed herein, however, respondent has since conceded that petitioners had the following amounts of unreported income for 1971, 1972, and 1973 based upon his analysis of their deposits and cash expenditures: Unreported income
1971
$30,144.21
1972
240,608.86
1973
284,172.83
OPINION
We must first consider whether petitioners had unreported income in the amounts determined by respondent for the years in issue. Where a taxpayer fails to keep adequate books and records, respondent is authorized to reconstruct his income in accordance with a method which clearly reflects income. Miller v. Commissioner,237 F.2d 830, 838 (5th Cir. 1956), affg. in part (on this issue) and revg. in part a Memorandum Opinion of this Court; Reaves v. Commissioner,31 T.C. 690, 717 (1958), affd. 295 F.2d 336 (5th Cir. 1961). This Court has consistently held that the bank deposits and cash expenditures method is a proper method of reconstructing income. Once the *188 respondent has determined that bank deposits constitute income, the taxpayer bears the burden of proving that the determination is erroneous. Estate of Mason v. Commissioner,64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Jones v. Commissioner,29 T.C. 601, 613-614 (1957). In the instant case, respondent has determined that certain deposits and expenditures made by petitioners during the years in issue constitute income. Petitioners do not contest the existence of the deposits and expenditures, but rather argue that those funds are traceable to a cash hoard that petitioner accumulated prior to 1970. According to petitioner, he had saved in excess of $500,000 prior to his incarceration in 1967. He attributes the lion's share of this cash hoard to money he earned performing illegal abortions. Petitioner maintains that at the time of his imprisonment in 1967 he had stored in excess of $500,000 in a green steel footlocker that he had hidden in the attic of his home in Ridgefield, New Jersey. After his release from prison, petitioner testified that he began investing those funds because he feared that one of his fellow inmates *189 would find him and attempt to steal his money. The only evidence in the record that supports the foregoing cash hoard claim is petitioner's own testimony. On the basis of the record herein, we must sustain respondent's determination of petitioner's unreported income as set forth in the notice of deficiency. Although respondent has failed to present any evidence to rebut petitioner's testimony, we find that such testimony alone fails to satisfy petitioner's burden of proof. See Rule 142(a), Tax Court Rules of Practice and Procedure.Since respondent has not disputed the fact that petitioner was engaged in an extensive abortion practice from 1960 to 1967, petitioner's assertion that he accumulated a large cash hoard from performing abortions possesses a degree of plausibility. Nevertheless, petitioner offered no evidence aside from his own testimony to support his cash hoard claim, and since we find certain aspects of his testimony questionable and harbor some doubts as to his credibility, we are unwilling to accept such testimony as fact. See Demkowicz v. Commissioner,551 F.2d 959 (3d Cir. 1977), revg. a Memorandum Opinion of this Court. Although petitioner *190 testified that he began investing his cash hoard after his release from prison because he feared that some of his fellow inmates would attempt to steal the money, his testimony during the later part of the trial indicates that he had similar fears for a considerable period of time prior to his incarceration. In fact, petitioner stated that when he accumulated too much money he would get rid of its somehow because it posed a threat to his family from people who would be willing to steal and kill for it. In so testifying, petitioner was referring to a sum of only $350,000 and events that allegedly occurred sometime between 1963 and 1965. Such testimony raises some doubts as to whether petitioner would actually leave in excess of $500,000 hidden in a steel footlocker in his attic while he was in prison. Moreover, since petitioner, by his own admission, has exhibited a clear disregard for the law in the past, we are unwilling to accept his testimony without some corroboration. Under these circumstances, petitioner's claim that funds deposited and expended by him during the relevant period are traceable to income received prior thereto is rejected. We hold, therefore, that petitioners *191 have failed to prove that respondent's determination of their unreported income as set forth in the notice of deficiency is erroneous. We must also sustain respondent's determination of the gain that petitioner realized upon the sale of stock in the Development Corporation of America. Petitioner has asserted that sometime in 1963, 1964, or 1965 he delivered a bowling bag containing $350,000 to an attorney in New York. Petitioner contends that he earned this money performing illegal abortions and that the recipient attorney agreed to launder the money for him by investing it in a new company. Although petitioner testified that he believed that he had been swindled because he had heard nothing about the investment for a number of years, he maintains that he finally received stock in the Development Corporation of America in exchange for the $350,000 payment. Therefore, petitioner asserts that he has a $350,000 basis in such stock, while respondent only credited petitioner with a $16,200 basis therein. The only support in the record for this somewhat implausible scenario is petitioner's own assertions and, as explained above, we find his uncorroborated testimony incredible. Therefore, *192 we hold that he has failed to meet his burden of proof on this issue. We next consider whether petitioner is liable for the additions to tax for fraud that respondent has imposed pursuant to section 6653(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The burden of proving fraud is upon respondent.Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Respondent must affirmatively establish fraud for each of the years in issue by clear and convincing evidence. Cefalu v. Commissioner,276 F.2d 122, 128 (5th Cir. 1960); Beaver v. Commissioner,55 T.C. 85, 92 (1970). The taxpayer must be shown to have acted with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941); Estate of Temple v. Commissioner,67 T.C. 143, 159 (1976). Since direct evidence of fraud is seldom available, respondent may meet his burden of proof through circumstantial *193 evidence. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978). A taxpayer's failure to satisfy his burden of proof as to the deficiency determined by respondent does not, however, constitute proof of fraud. George v. Commissioner,338 F.2d 221, 223 (1st Cir. 1964); Pigman v. Commissioner,31 T.C. 356, 370 (1958). In order to meet his burden of proof in the instant case, respondent must introduce evidence that the unexplained bank deposits and cash expenditures were derived from currently taxable income which petitioner fraudulently omitted from his tax return. See Drinkhouse v. Commissioner,225 F.2d 874 (2d Cir. 1955), affg. a Memorandum Opinion of this Court. The necessary proof may come from evidence which affirmatively shows a "likely" taxable source for the deposits and expenditures, or which negates all nontaxable sources, thereby eliminating the need for proof of a likely source. See Holland v. United States,348 U.S. 121 (1954); United States v. Massei,355 U.S. 595 (1958). [8]
On the record *194 before us, we conclude that respondent has not satisfied his burden of proof. He has failed either to prove a likely source of the challenged cash or to negate all nontaxable sources. He has offered no evidence as to the derivation of these funds, but has merely asserted the theory that petitioner is liable for the additions to tax due to fraud. Respondent has not attempted to affirmatively prove this assertion, but has instead inferred petitioner's liability. In so doing, respondent has relied almost exclusively on the substantial understatement of income by petitioner for each of the years in issue. Respondent has attempted to buttress the conclusion of fraud he draws from the fact of understatement with an argument premised on petitioner's arrest and conviction for the unlawful possession of firearms during 1974. Respondent maintains that this conviction, together with petitioner's admitted illegal abortion practice from 1960 to 1967, exhibits a pattern of covert criminal activity which represents a likely source of the unexplained deposits and expenditures during the years in issue. However, the record contains no evidence whatsoever indicating that petitioner was engaged *195 in any illegal activity, income-generating or otherwise, from 1970 to 1973. The fact that petitioner was convicted on a charge of the illegal possession of firearms and was indicted on other charges in 1974 does not lead to the conclusion that petitioner was engaged in the sale of firearms, or any other illegal activity, during the years in issue. While the record indicates that petitioner acted as the middleman in the sale of approximately $1,600 worth of firearms in 1974, this tells us nothing about the source of the deposits and expenditures that respondent has determined constitute income from 1970 through 1973. Respondent's argument assumes that the fact that petitioner was engaged in illegal activities before and after the years in issue necessarily leads to the conclusion that he was engaged in some sort of income-producing illegal activity during the years in issue. We, however, view respondent's position as mere speculation. During the course of the trial, respondent's counsel stated the following: Well, I will admit, Your Honor, we have no direct evidence that Dr. Raymond was involved in this enterprise during the taxable years in question nor that he was involved *196 in abortion. But, at the beginning of the period we have him in a lucrative covert activity and at the end of it we have him in a lucrative covert activity. And there is no reason to think that he wasn't in those in the intervening years. This excerpt from the transcript shows that respondent's argument misses the mark; he has failed to recognize that he bears the burden of proof on the issue of fraud. Although respondent asserts that there is no reason not to believe that petitioner was engaged in a lucrative, illegal endeavor during the years in issue, he was required to give us some evidence to support a finding that petitioner was engaged in such an endeavor. [9]
Respondent argues, in the alternative, that he has negated all possible nontaxable sources of the deposits and expenditures that he has determined constitute income, thereby eliminating the need to prove a likely source *197 of such deposits and expenditures. We disagree. While we found petitioner's uncorroborated testimony insufficient to establish that the source of the unexplained deposits and expenditures was a cash hoard accumulated prior to 1970, we did so only because the burden of proof was on petitioners, and petitioner's testimony alone was not enough to carry their burden. Moreover, aside from petitioner's testimony, there is no evidence whatsoever in the record regarding his alleged cash hoard. Consequently, in order to adopt respondent's position, we would have to conclude that petitioner's testimony is so inherently suspicious that it must be disregarded and dismissed as a falsehood, thereby requiring the conclusion that there was no cash hoard and that the only possible source of the funds was a taxable one for the years in question. In the absence of any evidence rebutting petitioner's testimony, however, such a conclusion would be tantamount to placing the burden of proof on this issue on petitioner, which we refuse to do.Accordingly, we hold that petitioner is not liable for the addition to tax for fraud for the years in issue. [10] See Jones v. Commissioner,supra, 619. *198 Finally, we hold that petitioner is not liable for the increased deficiencies that respondent determined for 1971, 1972, 1973, and that section 6501(a) bars the assessment and collection of the deficiency determined for 1970. With respect to the increased deficiencies determined in his amended answer for 1971, 1972, and 1973, respondent bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Such increased deficiencies arose from the additional deposits and expenditures that respondent discovered after he mailed the notice of deficiency. On the basis of the record before us, we find, for the same reasons *199 set forth above, that respondent has not met his burden of proof. We are not satisfied from the evidence presented that the deposits and expenditures in excess of the amounts determined in the notice of deficiency were taxable income. [11]
Section 6501(a), as a general rule, bars the assessment and collection of a deficiency in tax unless it is assessed within three years after the return was filed. Since the notice of deficiency was mailed to petitioner more than three years but less than six years after his return was filed, [12] the assessment and collection of the deficiency determined for 1970 is barred unless one of the exceptions to the general rule is applicable. Section 6501(c), which provides an unlimited *200 period for assessment and collection where a taxpayer files a false or fraudulent return, is inapplicable because we have found that respondent failed to prove that petitioner filed a false or fraudulent return for 1970. Respondent, however, relies upon the exception set forth in section 6501(e), which extends the limitation period to six years with respect to taxable years in which gross income stated in the return has been understated by more than 25 percent. Although the record shows that petitioners' unreported income for 1970, as determined by respondent, is in excess of 25 percent of the gross income reported on their 1970 return, respondent also bears the burden of proof on this issue. Stratton v. Commissioner,54 T.C. 255, 289 (1970). He cannot simply rely on his determination of petitioners' income and their failure to meet their burden of proof, but must establish that they failed to report taxableincome in excess of 25 percent of the gross income reported on their return. On the basis of the foregoing, it is clear that respondent has not met his burden of proof. See Macri Corporation v. Commissioner, T.C. Memo. 1976-273, 35 TCM at 1203, 1208, 1213, 1220, 1225, 45 P-H Memo. T.C. par. 76,273; *201 cf. Carr v. Commissioner, T.C. Memo. 1978-408, 37 TCM at 1702-1703, 47 P-H Memo. T.C. par. 78,408. Therefore, the exception set forth in section 6501(e) is inapplicable and assessment and collection of the deficiency for 1970 is barred under section 6501(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. Respondent concedes that no part of the underpayment of tax for the years in issue was due to fraud on the part of petitioner Elizabeth Raymond.↩
3. Petitioners were granted an extension of time to file their income tax return for 1970 to October 15, 1971. Their 1970 tax return was received by the District Director of Internal Revenue, Newark, New Jersey, on November 2, 1971.↩
4. Petitioner studied real estate during his incarceration.↩
5. Petitioner was charged with six counts associated with firearms as follows: (1) Conspiracy to engage in the business of dealing in firearms without a license, (2) unlawful sales of firearms, (3) illegal possession of firearms, (4) illegal transfer of firearms, (5) possession of firearms not identified by serial numbers, and (6) unlawful possession of a firearm in commerce and affecting commerce. All of the counts of the indictment relate to the period April 30, 1974, to October 3, 1974.↩
6. During 1972, petitioners sold certain stock in the Development Corporation of America for a gross sales price of $242,892.42. In computing petitioners' unreported capital gain income for 1972, respondent assigned a basis of $16,200 to such stock. Aside from respondent's determination of the gain realized upon the sale of such stock, petitioners have not contested his computation of the gain attributable to other sales during 1972. Accordingly, we find that petitioners have abandoned any issue with respect thereto. ↩
7. Petitioners have conceded that they received dividend income in the amounts determined by respondent and that they are not entitled to the partnership loss deductions disallowed by respondent.↩
8. See also Carl v. Commissioner,T.C. Memo. 1981-202↩.
9. At trial, petitioner objected to the admission of any evidence with respect to his arrest and conviction in 1974. We find it unnecessary to address the admissibility of such evidence, however, because even considering it we have found that respondent has failed to carry his burden of proof.↩
10. On brief, respondent did not assert that the other adjustments contained in the notice of deficiency reflected a fraudulent intent on petitioner's part. Furthermore, we do not believe that those items standing alone evince an intent to evade taxes. Moreover, with respect to the unreported capital gain income for 1972, most of it is attributable to the sale of stock in the Development Corporation of America and, once again, respondent's determination with respect thereto was sustained only because petitioner failed to meet his burden of proof.↩
11. Respondent argues that he has satisfied his burden of proof because petitioner stipulated to the existence of the deposits and expenditures that respondent used to determine the increased amounts of unreported income and deficiencies. However, while petitioner has stipulated to the existence of the additional deposits and expenditures, the pertinent point, upon which respondent has the burden of proof, is whether such deposits and expenditures constitute income.↩
12. Sec. 6503(a) tolls the running of the period of limitations upon the mailing of the notice of deficiency.↩