STANLEY G. CURTIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Curtis v. Commissioner
Docket No. 7756-72.
United States Tax Court
T.C. Memo 1981-420; 1981 Tax Ct. Memo LEXIS 323; 42 T.C.M. (CCH) 622; T.C.M. (RIA) 81420; August 11, 1981. Stanley G. Curtis, pro se. George W. Connelly, Jr., for the respondent. TIETJENS
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: This case is on remand from the Court of Appeals for the Fifth Circuit. The circuit court, 623 F.2d 1047 (1980), affirmed our decision in T.C. Memo. 1978-265 on the finding that petitioner did not possess a cash hoard, but the court vacated our finding of the amount of deficiencies and section 6653(b) [1] additions to tax for 1960 through 1968 and remanded the case to us so that we might explain our reasoning for these findings or modify our determination. The circuit court, in addition, asked us to explain our finding of fraud. [2]
*324 In accordance with the directives of the circuit court, we have modified our findings of fact. [3]
FINDINGS OF FACT 1. Assets
A. Cash on hand
In his recomputation of petitioner's net worth, respondent asserts that petitioner had $ 500 for each of the years ending 1959--1968. Although the evidence shows that in 1963, petitioner stated that he never had more than $ 500 cash on hand and that, also in that year, petitioner's statement to the New York State Liquor Authority confirms the accuracy of this amount, other evidence shows conflicting amounts. In choosing this figure for all ten years, however, respondent explained that he took the highest figure in evidence but kept the amount constant. Since respondent has not asserted nor has the evidence shown any increase in this asset from year to year, we find that petitioner had $ 500 for each year. This finding does not harm petitioner because being a constant amount, *325 we could not find any understatement of income, in any year at issue, attributable to this item. B. Cash in banks
In accordance with the bank statements from Genesee Valley Union Trust Co., Marine Midland Trust Co. of Rochester (MM) [4] and Central Trust Co. (CT), to whose accuracy petitioner has stipulated, we find that petitioner's checking accounts contained the following amounts at the end of each of the following years: Year
Amount
1959
$ 2,871
1960
6,502
1961
4,674
1962
4,721
1963
4,025
1964
2,769
1965
4,351
1966
9,316
1967
1,943
1968
13,492
In accordance with the bank statements from MM, Rochester Savings Bank, Columbia Banking, Savings and Loan Association, CT, Lincoln Rochester Trust Co., and First Federal Savings and Loan Association, most of which have been stipulated by petitioner *326 to be true representations of the amounts held in these accounts, petitioner's savings accounts contained the following: Year
Amount
1959
0
1960
0
1961
$ 2,003
1962
3,083
1963
56
1964
561
1965
1,795
1966
7,079
1967
12,986
1968
22,653
C. Securities/Investments
We find that petitioner had the following bases in his securities investments for 1959-1968: Year
Amount
1959
0
1960
0
1961
0
1962
$ 10,287
1963
25,730
1964
29,293
1965
22,042
1966
22,882
1967
50,266
1968
97,015
During August, 1967, petitioner wrote to Hayden, Stone, Inc., that the investment accounts that the firm had in his name belonged entirely to him; he stated that no one else had any interest in them. D. Real Estate Investments
The record shows that petitioner owned real estate with bases in the following amounts at the end of each year from 1959 to 1968: Year
Amount
1959
$ 23,050
1960
23,800
1961
23,050
1962
34,650
1963
48,301
1964
53,630
1965
[5] 38,818
1966
[5] 50,818
1967
[5] 50,818
1968
[5] 44,050
*327 E. Real Estate Improvements
As shown on petitioner's tax returns for 1960-1968, petitioner made improvements to his property in the following amounts: Year
Amount
1959
$ 2,605
1960
2,605
1961
9,059
1962
12,939
1963
15,368
1964
21,607
1965
26,068
1966
26,068
1967
26,068
1968
26,068
F. Mortgages Receivable
After reviewing the transcript, stipulations, and various mortgage agreements, we find that petitioner was a mortgagee who was owed the following amounts in the following years: Year
Amount
1959
0
1960
0
1961
0
1962
0
1963
$ 2,439
1964
2,246
1965
16,092
1966
9,665
1967
6,026
1968
4,977
G. Other Assets
From information found in tax returns and in other evidence, to which petitioner stipulated either at trial or in the written stipulation, we find that, at the end of each of the following years, petitioner owned office equipment, automobiles, a cottage, and boats for which he paid the following amounts: Year
Amount
1959
$ 2,049
1960
4,358
1961
5,956
1962
6,606
1963
6,900
1964
6,900
1965
9,363
1966
43,678
1967
42,903
1968
44,182
2. Liabilities
*328 A. Mortgages Payable
From data contained in various mortgage agreements, to whose accuracy petitioner stipulated either at trial or in the written stipulation, we find that petitioner had the following mortgages payable at the end of the following years: Year
Amount
1959
$ 12,496
1960
11,913
1961
11,295
1962
19,020
1963
34,429
1964
31,358
1965
16,017
1966
40,277
1967
37,701
1968
31,344
B. Loans Payable and Debit Balances (brokerage account)
From the brokerage account ledger statements and from a loan agreement, which petitioner stipulated to be truthful representations, we find that petitioner had a loan payable to MM at the end of 1967 in the amount of $ 2,917 and brokerage account debit balances at the end of the following years in the following amounts: Year
Amount
1962
$ 297
1963
6,446
1968
18,870
C. Reserves for Deparciation
From information provided in petitioner's tax returns, we find that petitioner had the following reserves for depreciation at the end of the following years: Year
Amount
1959
$ 2,272
1960
3,668
1961
5,876
1962
8,050
1963
10,390
1964
14,087
1965
16,425
1966
22,533
1967
24,503
1968
27,646
*329 3. Net Worth
Using the above figures, we calculate petitioner's net worth for 1959 through 1968 to be the following: Year
Amount
Increase in Net Worth
1959
$ 16,307
1960
22,184
$ 5,877
1961
28,071
5,887
1962
45,419
17,348
1963
52,054
6,635
1964
72,061
20,007
1965
86,587
14,526
1966
107,196
20,609
1967
126,389
19,193
1968
175,077
48,688
4. Additions
In order to compute petitioner's net worth plus living expenses, we have made certain additions. From information provided on the certificates of assessment and payments from the Internal Revenue Service Center, North Atlantic Region, Andover, Massachusetts to the accuracy of which petitioner has stipulated, we find that, as of the end of each of the following years, petitioner paid the following amounts is Federal taxes: Year
Amount
1960
[6] $ 600
1961
0
1962
1,025
1963
200
1964
946
1965
1,397
1966
0
1967
257
1968
1,068
*330 As shown on his amended return for 1968, petitioner paid the following taxes and interest on property located at 29 Averill Avenue for the years 1964 through 1968: Year
Amount
1964
$ 118
1965
523
1966
573
1967
514
1968
154
During 1962 and 1963, respectively, petitioner contributed $ 1,899 and $ 1,088 to the Monroe County Department of Social Services for his mother's care. According to Schedules A (Itemized Deductions) of petitioner's returns, he made the following expenditures: Year
Amount
1960
$ 1,235
1961
1,439
1962
4,588
1963
2,188
1964
2,299
1965
4,070
1966
3,366
1967
3,326
1968
3,750
Petitioner incurred additional living expenses in the amount of $ 2,500 for each year from 1960 through 1968. 5. Adjustments to Gross Income
From information on petitioner's returns, we find that petitioner may exclude $ 823 and $ 568 in 1963 and 1967, respectively, as capital gains. Also, from information provided in petitioner's returns, we find that he had depreciation expenses in the following amounts at the end of each of the following years: Year
Amount
1960
$ 1,552
1961
2,374
1962
2,635
1963
2,690
1964
3,697
1965
3,784
1966
6,310
1967
4,627
1968
4,101
*331 An adjustment must be made, moreover, for the dividend exclusions allowed petitioner in the amount of $ 50, each year, for 1962 and 1963, and in the amount of $ 100 for each year from 1964 through 1968. 6. Taxable Income
In order to determine petitioner's taxable income for 1960-1968, the following items must be subtracted from his adjusted gross income (increase in net worth plus living expenses). As shown on petitioner's returns, petitioner's itemized deductions, for 1960-1968, amounted to the following: Year
Amount
1960
$ 1,134
1961
1,252
1962
4,362
1963
2,121
1964
2,299
1965
4,070
1966
3,261
1967
3,053
1968
3,135
Adjustments in the following amounts must also be made for taxes and interest on 29 Averill Avenue which were not deducted on petitioner's return: Year
Amount
1964
$ 118
1965
523
1966
573
1967
514
1968
154
Finally, petitioner has been allowed a $ 600 personal exemption for each year between 1960 and 1968. [7]
*332 7. Taxable Income and Taxable Income Reported on Returns
Etitioner's taxable income for 1960 through 1968 was as follows: Year
Amount
1960
$ 6,926
1961
5,600
1962
19,713
1963
6,327
1964
19,056
1965
13,939
1966
16,204
1967
16,328
1968
48,070
Peitioner reported the following amounts of income on his Federal tax returns for the following years: Year
Amount
1960
$ 199 1961
2,802 1962
100 1963
3,399 1964
3,354 1965
1,030 1966
(958)
1967
2,579 1968
8,109 1968 (amended return)
11,021 ULTIMATE FINDINGS OF FACT 1. Petitioner did not report the following taxable income for the years 1960 through 1968: Year
Amount
1960
$ 6,727
1961
2,798
1962
19,613
1963
2,928
1964
15,702
1965
12,909
1966
17,162
1967
13,749
1968
39,961
1968(amended return)
37,049
2. A part of petitioner's underpayment of tax for the years 1960 through 1968 was due to fraud. OPINION The only issue remaining, pursuant to the circuit court's directive, is an explanation of our finding of fraud. The question of fraud is one of fact. Stratton v. Commissioner, 54 T.C. 255 (1970). *333 Although petitioner has the burden of proof with respect to the underlying deficiencies, Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure, respondent has the burden of proof to establish fraud by clear and convincing evidence. Sec. 7454(a); Imburgia v. Commissioner, 22 T.C. 1002 (1954). Respondent must show that some part of an underpayment of tax was due to fraud for each eaxable year in issue, Otsuki v. Commissioner, 53 T.C. 96 (1969); However, he is not required to prove the precise amount of the underpayment resulting from fraud. Otsuki v. Commissioner, supra.See Estate of Brame v. Commissioner, 25 T.C. 824 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958). An intent or purpose to evade tax must be shown. Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. Since fraud rarely can be established by direct proof of intention, however, the taxpayer's entire conduct may establish circumstantially *334 such fraudulent intent. Stone v. Commissioner, 56 T.C. 213 (1971); Otuski v. Commissioner, supra.
A consistent pattern of understating a substantial amount of income over several years is persuasive evidence of fraud. Holland v. United States, 348 U.S. 121 (1954). In the instant case, petitioner has consistently omitted a substantial amount of his income for the years 1960 through 1968. He accounted for his increase in net worth in each of these years by the purported existence of a cash hoard.We have already rejected petitioner's explanation as fanciful and the circuit court has affirmed us on this finding. The record, moreover, shows that petitioner, repeatedly, gave respondent's agents conflicting and alternative sources for this income which similarly were baseless; this pattern likewise is indicative of petitioner's fraudulent intent. United States v. Beacon Brass Co., 344 U.S. 43 (1952). Indeed, throughout the long history of this case, petitioner has refused to allow respondent's agents access to petitioner's books and records. Such refusal is more evidence of fraudulent intent. Otsuki v. Commissioner, supra. *335 For these reasons, we conclude that the fraud penalty provided by section 6653(b) should be imposed against petitioner for each year from 1960 through 1968. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise stated. ↩
2. See Curtis v. Commissioner, 623 F.2d 1047, 1054↩ n. 6 (5th Cir. 1980).
3. Due to the resignation of Judge William H. Quealy, who heard the evidence and rendered the original decision, the case was reassigned to Judge Norman O. Tietjens. The parties were given an opportunity to reopen the record but declined to do so.↩
4. Genesee Valley Union Trust Co. became Marine Midland Trust Co. of Rochester sometime during 1963. Although denominated an attorney trust account, petitioner admitted that he intermingled his clients' funds with his own. Because petitioner has not shown what amounts, if any, belonged to his clients, the entire balance is shown as his own.↩
5. With respect to these amounts, we have included a cost basis of $ 12,000 for petitioner's property located at 2126 Empire Boulevard, Rochester, New York. Petitioner had a mortgage with First Federal Savings and Loan Association of Rochester in the amount of $ 8,945. The documentary stamps affixed to the deed totaled $ 4.40 reflecting an additional consideration of between $ 3,000 and $ 4,000. On petitioner's amended return he used the figure $ 12,000 as his basis for depreciation of that property.↩
6. Although an additional payment of $ 75 was made in January, 1960 in relation to petitioner's 1959 tax liability, because this amount was not included in petitioner's liabilities for 1959, we have adjusted petitioner's 1960 payments in this amount.↩
7. We have disallowed the $ 600 per year exemption petitioner claimed on his returns from 1960 through 1968 for Bertha Curtis, his mother. Petitioner testified that his mother received social security benefits, owned savings accounts, and received a widow's pension. The account statement of the Monroe County Department of Social Services shows that petitioner's payments for his mother's care were less than those from other sources. From these facts, we conclude that petitioner has not shown that he is entitled to the extra $ 600 exemption he claimed for years 1960 through 1968. In fact, there is only evidence of his making any payments for Bertha Curtis' support for years 1962 and 1963.↩