RALPH DeFRANCO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Franco v. Commissioner
Docket No. 23476-85.
United States Tax Court
T.C. Memo 1988-400; 1988 Tax Ct. Memo LEXIS 430; 55 T.C.M. (CCH) 1722; T.C.M. (RIA) 88400; August 29, 1988. Moe D. Karash, for the petitioner. Jody Tancer, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By three separate notices of deficiency each dated April 12, 1985, respondent determined *431 deficiencies in petitioner's Federal income tax and additions to tax pursuant to section 6653(b)[1] in the following amounts: [2]
Addition to tax
Year
Deficiency
Sec. 6653(b)
1977
$ 22,272.35
$ 11,378.80
1978
9,771.83
4,885.92
1979
6,600.53
3,300.27
The issues for our considerations are (1) whether petitioner underreported income on his Federal income tax returns for the taxable years in issue; (2) whether any part of the underpayment of taxes for any of the years in issue was due to fraud under section 6653(b); and (3) whether the statute of limitations bars the assessment and collection of any deficiency for the years in issue. FINDINGS *432 OF FACT Some of the facts are stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. During the years in issue Ralph DeFranco (petitioner) resided in Syosset, New York, and was unmarried. Petitioner is a cash basis taxpayer. Since 1962, petitioner has been in the business of repairing automobile alternators and starters. Petitioner's business, Anchor Auto Electric Service, Inc. (the business), was conducted as a sole proprietorship until February 1979, when petitioner incorporated the business and took in Alfredo Cocozza (Cocozza) as the other 50 percent shareholder. In 1978, petitioner and Cocozza each contributed $ 18,000 to constitute the corporation's capital. The corporation was inactive until March 28, 1979, when it reorganized as a subchapter S corporation. At some time prior to February 28, 1979, petitioner loaned $ 13,249 to the business. On September 30, 1979, petitioner bought Cocozza's interest int he business and became the sole shareholder. Throughout the life of the business, petitioner exercised almost exclusive control over day-to-day operations and personally issued almost all of the corporate *433 checks. In 1978, petitioner and Cocozza formed a partnership (the partnership) to purchase a piece of commercial real estate. The purchase price was $ 11,000 and Cocozza issued petitioner a check, in the amount of $ 5,500, as payment for his share. During the years in issue, petitioner maintained several checking accounts for his personall use as well as several for the business. Both petitioner and the business had checking accounts in Manufacturer's Hanover Trust Company until September 19, 1977. In August 1977, petitioner opened checking accounts at Chase Manhattan Bank for himself and the business. Petitioner maintained five savings accounts for his personal use of which two were in the Long Island Savings Bank, two were in the New York Bank for Savings and one was in Chase Manhattan Bank. Petitioner's case was first considered by Revenue Agent Dennis Frank (Frank) who was employed by the Examination Division of the Internal Revenue Service (IRS) at the Office of the District Director in Brooklyn, New York. After conducting an audit of petitioner's 1977 tax return, using the source and application of funds method of income reconstruction, Frank determined that there was *434 evidence of unreported income. The source and application of funds method, a common method of income reconstruction, compares all income, derived from both taxable and non-taxable sources, with all money spent or otherwise accounted for. Because Frank determined that petitioner might have underreported gross receipts, he was authorized under standard IRS procedure to examine every aspect of the requisitioned return. Petitioner did not produce any books and records, requiring Frank to rely primarily on bank statements and cancelled checks. Several items were claimed as deductions on petitioner's Schedule C and Schedule A but were disallowed when petitioner failed to provide Frank with records which would substantiate his claims. [3] After his initial examination, Frank made the following determinations of petitioner's cash flow in taxable year 1977: Cash Available
Gross Receipts (from Schedule C)
$ 23,872
Cash in Savings Account on 1/1/77
1,000
Cash in Business Checking Account on 1/1/77
494
Cash in Personal Checking Account on 1/1/77
352
Interest Income
1,246
TOTAL
$ 26,694
*435 Cash Spent or Accounted For
Allowable Business Expenses [4]
$ 15,626
Cash in Savings Accounts on 12/31/77
38,372
Cash in Business Checking Account on 12/31/77
1,215
Cash in Personal Checking Account on 12/31/77
257
Personal Cost of Living [5]
10,465
TOTAL
$ 65,935
Cash Spent or Accounted For
$ 65,935
Cash Available
26,964
ADDITIONAL INCOME
$ 38,971
On the basis of the source and application *436 of funds analysis, Frank determined that petitioner had unreported gross receipts in taxable year 1977 in the amount of $ 38,971. Frank asked Mr. West (West), petitioner's representative at audit, for an explanation of the discrepancies between the money petitioner received and the money he spent. Not satisfied with West's response, Frank requisitioned petitioner's tax returns for 1978 and 1979 and performed a similar examination. Again utilizing the source and application method of income reconstruction, Frank determined underreported income in the amount of $ 12,474 for taxable year 1978. Cash Available
Gross Receipts (Schedule C)
$ 37,406
Cash in Savings Accounts, 1/1/78
38,372
Cash in Business Checking Account, 1/1/78
1,215
Cash in Personal Checking Account, 1/1/78
257
Interest Income
2,147
Checks from Cocozza [6]
23,500
Dividend Income
149
Insurance Reimbursement
800
TOTAL
$ 103,846
*437 Cash Spent or Accounted For
Allowable Business Expenses [7]
$ 25,386
Cash in Savings Accounts, 12/31/78
25,631
Cash in Business Checking Account, 12/31/78
39,148
Cash in personal Checking Account, 12/31/78
1,276
Building Purchase Deposit [8]
11,000
Personal Cost of Living [9]
13,879
TOTAL
$ 116,320
*438 Cash Spent or Accounted For
$ 116,320
Cash Available
103,846
ADDITIONAL INCOME
$ 12,474
Frank's examination of petitioner's cash flow for 1979 was also conducted using the source and application of funds method and determined the existence of underreported income in the amount of $ 8,508. Cash Available
Gross Receipts (Schedule C)
$  8,707
Interest Income
1,930
Cash in Savings Accounts, 1/1/79
25,631
Cash in Business Checking Account, 1/1/79
39,148
Cash in Personal Checking Account, 1/1/79
1,276
Wages Reported on 1978 Return
8,687
TOTAL
$ 85,379
Cash Spent or Accounted For
Allowable Business Expenses [10]
$  5,056
Personal Cost of Living
11,580
Cash in Savings Accounts, 12/31/79
20,329
Cash in Business Checking Account, 12/31/79
5,222
Cash in Personal Checking Account, 12/31/79
899
Deposits to Partnership Capital [11]
12,501
Deposits into Corporation [12]
38,000
TOTAL
[13] $ 93,587
*439 Cash Spent or Accounted For
$ 93,587
Cash Available
85,379
ADDITIONAL INCOME
$ 8,208
Once he had perceived a pattern of underreported income in taxable years 1977, 1978 and 1979, Frank referred petitioner's case to the Criminal Investigation Division of the IRS (CID). Such a referral is consistent with standard procedures following a discovery of a discrepancy between reported income and cash expenditure pursuant to an examination. [14]
Special Agent Eddy Melendez (Melendez), a CID agent for 16 years, received the case file from Frank and commenced an investigation into taxable year 1978. Because petitioner had spent a large sum of money purchasing real estate, Melendez used the expenditures *440 method of income reconstruction. Relying on petitioner's bank records for his personal and business accounts, Melendez determined that petitioner had spent more than he had received for taxable year 1978. Melendez' analysis employing the expenditures method follows: Total Expenditures
$ 54,061
Less: Non-taxable Receipts
23,500
Insurance Reimbursement
800
Itemized Deductions
1,979
Disallowed Deductions [15]
1,750
Reported Taxable Income
8,487
ADDITIONAL INCOME
$ 17,545
According to Melendez' computations, petitioner made expenditures in excess of reported income in the amount of $ 17,545 in taxable year 1978. Because Melendez found insufficient evidence that income was underreported in the years immediately preceding and following the taxable year 1978 he declined to recommend criminal prosecution and instead returned the case file to the Examination *441 Division for a consideration of possible civil action. The three notices of deficiency sent to petitioner on April 12, 1985, resulted from Frank's civil examination. ULTIMATE FINDINGS OF FACT Petitioner had unreported income in the amounts of $ 38,971, $ 12,474 and $ 8,208 for the taxable years 1977, 1978 and 1979, respectively. OPINION The income tax returns at issue herein for taxable years 1977, 1978 and 1979 were all filed more than three years before April 12, 1985, the date on which each statutory notice of deficiency was mailed. With respect to the deficiencies determined in the notices of deficiency, respondent alleges fraud within the meaning of section 6653(b). If fraud cannot be established for at least a part of the determined underpayment, assessment and collection of the deficiencies for taxable years 1977 and 1979 will be barred by the statute of limitations. Sec. 6501(c). With respect to taxable year 1978, respondent contends that petitioner omitted more than 25 percent of his gross income and that, therefore, the six-year statute of limitations applies. Sec. 6501(e). Respondent's reconstruction of petitioner's income shows underreported income for the *442 taxable years 1977, 1978 and 1979 in the amounts of $ 38,971, $ 12,474 and $ 8,208, respectively. Respondent introduced an additional computation of unreported income with respect to taxable year 1978 derived using the net expenditures method. However, the resulting figure is different from the figure derived from the source and application of funds method of income reconstruction. Because respondent made no attempt to reconcile or explain the difference, we will consider only the figure derived under the source and application of funds method. Respondent's determination of a deficiency carries a presumption of correctness and petitioner bears the burden of proving that determination erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner argues that respondent's use of the source and application of funds method was improper because he supplied respondent with copies of bank records and cancelled checks. However, the materials petitioner provided failed to adequately depict petitioner's complete financial activity during the years in issue. Because petitioner failed to provide respondent with books and records which document his cash flow *443 during the years in issue, respondent has wide latitude in reconstructing petitioner's income and the method employed need only be reasonable in the light of all the surrounding facts and circumstances. Sec. 446(b); Giddio v. Commissioner,54 T.C. 1530, 1533 (1970); Harper v. Commissioner,54 T.C. 1121, 1129 (1970). Bank deposits are prima facie evidence of the receipt of income. Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946). Furthermore, an examination of petitioner's bank deposits is proper even where petitioner does submit books and records. Campbell v. Guetersloh,287 F.2d 878, 880 (5th Cir. 1965). Thus, we conclude that petitioner's argument is without merit. Respondent must establish both the existence of an underpayment in tax and that some part of that underpayment is due to fraud, in order to prove that the underpayment of tax was due to fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983); *444 Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Section 6653(b) provides an addition to tax equal to 50 percent of any underpayment attributable to fraud. Respondent bears the burden of proving the existence of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Hebrank v. Commissioner, supra at 642; Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Respondent must show that petitioner intended to evade taxes which he knew or believed that he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107, 111-112 (1956). The existence of fraud is a factual question to be determined by an examination of all the facts and circumstances. *445 Kotmair v. Commissioner,86 T.C. 1253, 1260 (1986); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. in an unpublished opinion 578 F.2d 1383 (8th Cir. 1978).; Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). However, fraud may be proved with circumstantial evidence because direct proof of the taxpayer's intent is rarely forthcoming. We may look to petitioner's entire course of conduct in determining the existence of fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 112. Respondent argues that the income reconstruction, computed using the source and application of funds method, demonstrates that petitioner had unreported income for the taxable years in issue and suggests that petitioner's unreported income came from his business over which he exercised almost complete control. The figures of the income reconstruction clearly show that petitioner did have access to more money than was reported on his income tax returns. However, *446 upon consideration of the entire record, including the demeanor of the witnesses at trial, we conclude that respondent has not established, by clear and convincing evidence, that petitioner's failure to report all his income was conducted with fraudulent intent to evade tax. Respondent's case in chief clearly established that petitioner underreported his income for each of the years in issue and correspondingly that there were underpayments in tax. The amount of money petitioner spent during the taxable years in issue exceeds the amount he reported as income. A sizable and unexplained discrepancy between reported income and actual money spent or deposited is strong evidence of fraud. Stone v. Commissioner,56 T.C. 213, 224 (1971). Nonetheless, an underpayment alone does not establish fraudulent intent. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), affg. a Memorandum Opinion on the Court; Switzer v. Commissioner,20 T.C. 759, 764 (1953). However, a pattern of repeated substantial underpayments may be evidence of fraudulent intent. *447 Harper v. Commissioner,54 T.C. 1121, 1139 (1970). Similarly, failure to maintain adequate books and records is some evidence of fraud. Harper v. Commissioner, supra at 1142. Finally, a pattern of behavior designed to conceal information and hamper examination by IRS agents is further evidence of fraudulent intent. Beaver v. Commissioner, supra at 92-93. Petitioner's behavior prior to and during Frank's examination did not demonstrate an intent to conceal information. Petitioner apparently kept few personal or business records but the evidence indicates that he willingly gave what little he did have to Frank and Melendez. He sent a representative to confer with Frank in an attempt to resolve the dispute and indeed many substantive issues were settled in this way. In general, petitioner's behavior did not create an impression of deception or subterfuge. At trial, petitioner did not appear to be a sophisticated and knowledgable businessman. He seemed to have a weak grasp of the financial and operational details of his own business. Petitioner stated that he had hired an accountant to prepare his tax returns and he appeared to *448 have little comprehension of the returns' content or meaning. Petitioner could not remember how much money he had made nor how much he had spent. In sum, the record created the impression that petitioner was a disorganized and careless businessman and that his personal finances were kept in an equally chaotic manner. Furthermore, the record shows that petitioner was primarily concerned with concealing income from his wife. While such a goal may not appeal to the highest moral values, it is not synonymous with fraudulent intent to evade income tax. Respondent's evidence falls short of establishing, by clear and convincing evidence, that petitioner's failure to report income during the years in issue was motivated by fraudulent intent. Because respondent has not met his burden of proving fraud the statute of limitations bars the assessment and collection of the deficiencies for taxable years 1977 and 1979. With respect to taxable year 1978, respondent contends that even if we do not find fraud, we may still consider the existence of a deficiency in petitioner's Federal income tax under section 6501(e). Section 6501(e) provides, in pertinent part, for a six-year statute of limitations *449 applicable where the taxpayer omits from reported gross income an amount in excess of 25 percent of reported gross income. Because the statutory notice was filed on April 12, 1985, a six-year statute of limitations with respect to taxable year 1978 would not have expired, subject to our finding that the other conditions o section 6501(e) were satisfied. Respondent bears the burden of proving that more than 25 percent of petitioner's reported gross income was omitted from reported gross income. Ratto v. Commissioner,20 T.C. 785, 788 (1953). In 1978 petitioner reported gross income in the following amounts: Gross Receipts (Schedule C)
$ 37,406.27
Interest Income
2,146.73
Dividend Income
148.50
Total [16]
$ 39,701.50
Respondent contends that because his determination of an omission from petitioner's reported gross income in taxable year 1978 in the amount of $ 12,474 exceeds 25 percent of petitioner's reported gross income, we should find that *450 the requirements of section 6501(e) are met. For the reasons detailed below we agree with respondent. At trial, petitioner offered two explanations for the unreported income in the amount of $ 12,474 that respondent determined using the source and application of funds analysis. Petitioner testified that he had received $ 2,500 from his insurance company in payment of a claim he filed with respect to the theft of a car. However, respondent was only able to find evidence of a payment of insurance proceeds in the amount of $ 800 and petitioner offered no documentary or corroborative evidence at trial to support the validity of the higher figure. Secondly, petitioner testified that he sold a gun and Harneit, the buyer, corroborated petitioner's account. However, petitioner could not accurately ascertain the amount of gain he realized upon the sale of the gun characterizing it as "not much." Petitioner introduced no other evidence of nontaxable sources of income in 1978. Without anything more substantial upon which to base a finding that petitioner did not enjoy unreported income in the amount of $ 12,474 as respondent alleges, and we have found we must hold for respondent. Because *451 the amount of omitted gross income exceeds 25 percent of reported gross income, we conclude that section 6501(e) applies and respondent is not time barred from assessing and collection taxes due from petitioner with respect to taxable year 1978. Thus, we conclude that respondent has failed to meet his burden of proving the existence of fraud by clear and convincing evidence with respect to all three years in issue and therefore, the statute of limitations bars collection and assessment for taxable years 1977 and 1979. However, we further conclude that respondent has sustained the burden of proving that sectin 6501(e) applies with respect to taxable year 1978 and that petitioner has failed to prove respondent's determinations of deficiency erroneous. In light of the foregoing, Decision will be entered for the petitioner for taxable years 1977 and 1979. Decision will be entered under Rule 155 for taxable year 1978.
Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Prior to trial, respondent and petitioner conferred and agreed to a reduction in respondent's determination of unreported income. Thus, the figures in the statutory notices do not represent the correct deficiencies as determined by respondent immediately prior to trial. ↩
3. Among these disallowed expenses were a deduction in the amount of $ 2,000 for legal expenses incurred incident to petitioner's separation and divorce, and a deduction for alimony payments. ↩
4. Frank determined the figure representing allowable business expenses after an additional conference with petitioner's representative. The figure was comprised of the following: ↩
Cost of Goods Sold (Sch. C)
$ 10,886
Other Sch. C Deductions
6,425
Total Deductions
$ 17,311
Purchases Disallowed
1,685
Total Allowable Business
Expenses
$ 15,626
5. The figure representing petitioner's cost of living was determined by adding checks payable to petitioner drawn on the business checking accounts to the sum of checks written on petitioner's personal checking accounts and subtracting the amounts intended to be petitioner's salary from the business. ↩
6. The figure representing checks from Cocozza is comprised of two checks, one in the amount of $ 18,000 which was to be contributed to the capital of the corporation and the other in the amount of $ 5,500 which was a contribution to the capital of the partnership which petitioner and Cocozza organized to purchase a piece of real estate. ↩
7. Frank disallowed certain claimed deductions for travel expenses and miscellaneous business expenses, in the aggregate amount of $ 1,750 because petitioner failed to provide any substantiation. ↩
8. The figure given for the deposit for the building's purchase represents a check issued by petitioner on December 7, 1978, to Harry Ostrov to hold in escrow pending the final purchase of the building by the partnership of petitioner and Cocozza. ↩
9. Petitioner's personal expenditures in taxable year 1978 included the purchase of a new gun, inlaid with gold, for $ 3,200, many checks payable to Peter Robinson, the son of petitioners' girlfriend, for assistance with household expenses, the purchase of a new car from Manhattan Ford for $ 1,443, and alimony and child support payments to petitioner's ex-wife, Victoria DeFranco, in the aggregate amount of $ 5,200. ↩
10. Of the deductions petitioner claimed as business expenses on his tax return, only automobile expenses, in the amount of $ 1,865, were disallowed. ↩
11. According to the partnership's K-1 return, petitioner's total contribution to the partnership with Cocozza was $ 23,501. Of this amount $ 11,000 had been paid in 1978, so Frank allocated the remainder to Cash Spent in 1979. ↩
12. The figure representing deposits into the corporation includes checks int he amount of $ 18,000 from both Cocozza and petitioner as well as an additional check for $ 2,000 drawn on one of petitioner's bank accounts. ↩
13. In his computations respondent gave the amount $ 93,887 as the sum of the figures in the column "Cost Spent or Accounted For." However, when we add these figures we arrive at a total of $ 93,587 and we have adjusted the figures for total cash spent and for additional income accordingly. ↩
14. There was some discussion at trial concerning the fact that petitioner's 1977 tax return had been stamped "closed, no change" by an undisclosed IRS employee from the Examination Division. However, because the taxpayer never learns of such a stamp until after having been informed of the ultimate decision by letter, there is no question of prejudice to petitioner from such a stamp, and its existence is irrelevant for purposes of this proceeding. ↩
15. A payment in the amount of $ 1,500 made to petitioner's Keogh plan attributable to taxable year 1978 was actually paid in 1979 and, therefore, was deleted from this accounting of funds actually spent or accounted for. ↩
16. Section 6510(e)(1)(A)(i) requires that gross income is not reduced by the cost of goods sold for purposes of computing gross income under section 6501(e)↩.