EDWARD H. ASHDOWN and DANIELLA L. ASHDOWN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Ashdown v. Commissioner
Dockets Nos. 28686-83; 28687-83; 28688-83.
United States Tax Court
T.C. Memo 1989-40; 1989 Tax Ct. Memo LEXIS 37; 56 T.C.M. (CCH) 1160; T.C.M. (RIA) 89040; January 25, 1989. Lewis B. Kean, for the petitioners. Lynda B. Taylor, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By separate notices of deficiency dated July 14, 1983, respondent determined deficiencies in petitioners' Federal income tax and additions to tax under section 6653(b) [2] in the following amounts: Taxable Year
Deficiency
Addition to Tax
1968
$ 116,005.43
$ 58,002.72
1969
145,231.07
72,615.54
1970
20,563.53
10,281.77
*38 After concessions, [3] the sole issue for our consideration is whether petitioners had unreported income resulting in deficiencies for taxable years 1968, 1969 and 1970 in the amounts of $ 116,005.43, $ 145,231.07 and $ 20,563.53, respectively, and, if so, whether any part of these underpayments were attributable to fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Edward H. Ashdown (petitioner), [4] a cash basis taxpayer, resided in Marina Del Rey, California, at the time of filing the petition herein. A graduate of the University of Illinois and the University of Southern California School of Law, petitioner was self-employed during the years in issue. Petitioner, *39 who characterized his occupation as an investor and entrepreneur, organized and promoted shell corporations. [5] After driving up the price of the stock in the shell corporations, petitioner sold it on the stock market, frequently enjoying substantial gains. During the years in issue, petitioner's income tax returns were prepared by Will M. Mitchell (Mitchell), an accountant, who was not available for trial. Petitioner timely filed joint Federal income tax returns for each of the years in issue. *40 On July 30, 1971, petitioner filed a bankruptcy petition in the United States District Court for the Central District of California on behalf of himself and of three corporations, Libra, Inc., R-2 Inc., and International Thermal Heating Corp. During the bankruptcy hearing, several of the creditors testified about petitioner's stock market trading activities, causing the bankruptcy referee to characterize petitioner's behavior as "deliberate, malicious and wilful." On August 14, 1973, petitioner was tried in the United States District Court for the Western District of Texas, convicted of mail fraud and securities violations and sentenced to a prison term of seven years. [6] Among its findings, the District Court determined that through the purchase and sale of stock in Mountain States Development Company petitioner realized sales proceeds in the amount of at least $ 170,000.00. *41 After the United States Court of Appeals for the Fifth Circuit affirmed the conviction, [7] petitioner went to Mexico until he was deported two years later by the Mexican authorities and agents from the Federal Bureau of Investigation. [8] Petitioner then began serving his sentence at McNeal Island Penitentiary and then at the Lompoc Penitentiary. Between 1968 and 1970, Internal Revenue Agent Robert Simmonds (Simmonds) was assigned to petitioner's case as part of the Internal Revenue Service's "National Shell Project." The National Shell Project was organized to investigate the promotion of shell corporations and was staffed by six Internal Revenue Agents (hereinafter referred to as revenue agents) and six Special Agents from the Criminal Investigation Division. Pursuant to his examination of petitioner's activities as a promoter of shell corporations, Simmonds obtained and copied the books and records which had been taken into *42 custody by the Bankruptcy Court to evaluate petitioner's bankruptcy petition. Based on those records, which were subsequently lost or destroyed, Simmonds prepared a schedule of petitioner's capital gains and losses during the years in issue. Although the actual books and records could not be produced at trial Simmonds' schedule of capital gains and losses was introduced into evidence. Simmonds' report calculated the existence and amount of petitioner's capital gain income during the years in issue. For taxable year 1968, Simmonds computed that petitioner received gross income in the amount of $ 184,618.87 from sales of stock and commissions, primarily from the sale of approximately 183,000 shares of stock in Mountain States Development Company. Petitioner had received 150,000 of the shares of stock in January 1968 as a finders' fee for arranging a meeting between two businessmen in 1967, as well as an additional 18,000 shares as another finder's fee from Manhattan West Corporation. For taxable year 1969, Simmonds calculated that petitioner received total unreported income in the amount of $ 215,548.66, including 180,000 shares in Uraninite Corporation which petitioner received *43 without payment. For taxable year 1970, Simmonds determined that petitioner had opened a bank account in the name of Will M. Mitchell, petitioner's accountant, in which he deposited $ 51,699.01 from the sale of stock. Petitioner, by his own admission, opened the account to hide his assets from his creditors as he initiated bankruptcy proceedings. Petitioner retained a power of attorney over this account and was authorized to issue and endorse checks. Furthermore, Simmonds computed petitioner's short-term capital gains income from the sale of stock for taxable year 1970. These items resulted in total unreported income in the amount of $ 55,777.33 for taxable year 1970. Included in respondent's determinations of unreported income are amounts representing certain disallowed deductions. Petitioner failed to offer respondent any support or evidence that he was entitled to the deductions. For taxable years 1968 and 1969 respondent disallowed petitioner's business expenses and itemized deductions in the amounts of $ 39,658.12 and $ 19,878.15, respectively. On July 14, 1983, respondent issued three separate statutory notices of deficiency on the grounds that petitioner had unreported *44 income due to fraud and had failed to substantiate business expenses deductions. OPINION Our consideration must begin with an examination of whether any part of the deficiencies herein are due to fraud because the statute of limitations precludes respondent's assessment and collection of the deficiencies at issue unless respondent proves that petitioner's returns were "false or fraudulent with the intent to evade tax." Sec. 6501(c)(1). The burden that respondent bears in proving fraud under section 6501(c)(1) is the same burden he bears in establishing fraud for purposes of the addition to tax under section 6653(b). Ruidoso Racing Association, Inc. v. Commissioner,476 F.2d 502, 505, 507 (10th Cir. 1973), affg. a Memorandum Opinion of this Court. Respondent must establish by clear and convincing evidence that petitioner underpaid his taxes during each of the years in issue and that some part of that underpayment was due to fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983). We conclude that respondent has met his burden of proving that petitioner had unreported income for taxable years 1968, 1969 and 1970 and that at least some part of *45 petitioner's underpayments in tax for each of the taxable years in issue is attributable to fraud. The issue of fraud presents a factual question which must be decided on the basis of an examination of all the evidence in the record. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Mensik v. Commissioner,328 F.2d 147 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner,56 T.C. 213, 224 (1971); Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud is never presumed but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner,55 T.C. 85 (1970). Fraud may be proved by circumstantial evidence and reasonable inferences drawn from the record because direct proof of the taxpayer's intent is rarely available. Spies v. United States,317 U.S. 492 (1943); Rowlee v. Commissioner,80 T.C. 1111 (1983); Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Fraud is defined as an intentional *46 wrongdoing designed to evade tax believed to be owing, effectuated by conduct designed to conceal, mislead or otherwise prevent the collection of such tax. Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Powell v. Granquist,252 F.2d 56 (9th Cir. 1958); Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraudulent intent may be inferred from a pattern of conduct. Spies v. United States, supra at 499. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States,348 U.S. 121, 137 (1954); Otsuki v. Commissioner,53 T.C. 96 (1969). Fraud may also be inferred where the taxpayer makes false and inconsistent statements to revenue agents, Grosshandler v. Commissioner,75 T.C. 1, 20 (1980), or files false documents. Stephenson v. Commissioner, supra.Similarly, understated income, inadequate records, implausible or inconsistent explanations of behavior, concealment *47 of assets and failure to cooperate with tax authorities are all indicia of fraud. Bradford v. Commissioner,796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Furthermore, fraudulent intent may be more easily inferred where the taxpayer is intelligent, educated and knowledgable about taxes. Simms v. Commissioner,422 F.2d 340 (4th Cir. 1970), affg. a Memorandum Opinion of this Court; O'Connor v. Commissioner,412 F.2d 304, 310 (2d Cir. 1969), affg. on this issue a Memorandum Opinion of this Court, cert. denied 397 U.S. 921 (1970). [9]
Petitioner's income, as calculated in Simmonds' report which was based on petitioner's books and records, was significantly greater than he reported during all three of the years in issue. Such a pattern of significant underreporting for three consecutive years is evidence of fraudulent intent. Similarly, because petitioner was well educated he knew that he should have reported all of his income. Furthermore, petitioner was experienced *48 at defrauding his investors and concealing his assets from his creditors. Some of the income which he declined to report was the fruit of illegal and fraudulent activity. Further evidence of petitioner's fraudulent motivation is apparent in his creation of a secret bank account in which to hide his money. While his main objective, at that time, was to allegedly protect his assets from his creditors, his efforts are evidence of his expert ability and willingness to conceal and mislead. Petitioner's failure to produce books and records is a further indication of fraud. He provided his books and records to the bankruptcy court but made no effort to reclaim them once the proceedings were complete. Furthermore, as an educated and knowledgeable businessman, petitioner should have known that the books and records should be recovered, and that he had a duty to maintain and preserve adequate books and records. Sec. 6001. Petitioner's failure to produce his books and records is due to his own carelessness and allows the inference that if their contents had not been damaging to petitioner's present position he would have tried harder to procure them. Petitioner's only explanation for *49 the discrepancy between his actual income and his reported income was his claim that his accountant Mitchell had failed to report all the income. However, petitioner did not even attempt to explain why Mitchell would have deliberately understated petitioner's income without authorization for three consecutive years. It is unlikely that mere negligence or mistake would produce such substantial amounts of omitted income for three years. Furthermore, petitioner had a duty to check the correctness of his returns and repeated mistakes of such magnitude would have surely come to his attention. In short, without some evidence we cannot conclude that Mitchell failed to report income in such considerable amounts for three consecutive years without petitioner's approval. Finally, without any substantiation for his version of events we find petitioner's testimony inherently implausible and unworthy of our belief, especially when considered in light of petitioner's generally deceptive and duplicitous practices of past years. Finally, we conclude that respondent's determinations of deficiencies for the years in issue are correct. Where the taxpayer has failed to keep or produce books and *50 records to support his claims of income, respondent is authorized by section 446 to compute income by any method which clearly reflects income in his opinion. Moore v. Commissioner,722 F.2d 193, 196 (5th Cir. 1984), affg. a Memorandum Opinion of this Court; Sutherland v. Commissioner,32 T.C. 862 (1959). Furthermore, in such a case, respondent has wide latitude in adopting a method for reconstructing the taxpayer's income and the method adopted need only be reasonable in light of all the surrounding facts and circumstances. Giddio v. Commissioner,54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner,40 T.C. 30, 33 (1963). The determinations are based on Simmonds' report which was calculated using petitioner's books and records. Because those books and records are unavailable to us, we accept the findings stated in Simmonds' computation of gain and loss. Petitioner has offered no evidence that those findings are erroneous and we therefore conclude that they are not. Thus, we conclude that respondent has met his burden of proving that petitioner enjoyed unreported income during taxable years 1968, 1969, and 1970 *51 and that some portion of the resulting underpayment in tax was attributable to fraud. Furthermore, we uphold respondent's determination after concessions, of the amounts of the deficiencies. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Edward H. Ashdown, docket No. 28687-83; Edward H. Ashdown and Carolyn Ashdown, docket No. 28688-83.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Prior to trial, respondent conceded that his initial determination was erroneous and reduced such determination by $ 18,048.93 and $ 3,888.82 for taxable years 1968 and 1969, respectively.↩
4. Edward H. Ashdown was married to Carolyn Ashdown and filed a joint return with her for taxable year 1968. In 1970 Edward H. Ashdown was married to Daniella L. Ashdown and filed a joint return with her for that year. Edward and Daniella Ashdown were divorced at the time of trial and neither Carolyn nor Daniella Ashdown could be located. Because the statute of limitations bars this case unless fraud is established and no allegations of fraud have been raised with respect to either Carolyn or Daniella Ashdown, our discussion will concern Edward H. Ashdown only. However, if we conclude that Edward H. Ashdown filed false or fraudulent returns with the intent to evade tax the statute of limitations is extended on the joint return with respect to both husband and wife. See Hicks Co. v. Commissioner,56 T.C. 982, 1030 (1971), affd. 470 F.2d 87↩ (1st Cir. 1972). 5. Neither party defined the term shell corporation although each of them used it. We assume it means a corporation which has no assets or has assets of very little value although it appears to be prosperous and successful on paper.↩
6. Petitioner was ultimately convicted of "advising and aiding and abetting the devising of a scheme and artifice to defraud others and for obtaining money and property by means of false pretenses, representations and promises, in the sale and offering for sale of securities and using the mail and means and instruments of transportation and communication in interstate commerce in furtherance of said scheme, in violation of 15 U.S.C. Sec. 77q and 77x, 18 U.S.C. Sec. 1341, and 18 U.S.C. Sec. 2↩."
7. United States v. Ashdown,509 F.2d 793 (5th Cir. 1975), rehearing and rehearing en banc denied, 511 F.2d 1402↩ (5th Cir. 1975). 8. Petitioner said that he was "traveling abroad" until he was "kidnapped by the F.B.I."↩
9. See Panzitta v. Commissioner,T.C. Memo. 1986-279↩ (a graduate of college and law school found liable for fraud).