RALPH McFADDEN AND CONSTANCE McFADDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McFadden v. Commissioner
Docket No. 17420-87.
United States Tax Court
T.C. Memo 1989-174; 1989 Tax Ct. Memo LEXIS 177; 57 T.C.M. (CCH) 152; T.C.M. (RIA) 89174; April 17, 1989. Neil Deininger and Joyce Kinkead, for the petitioners. Edsel Ford Holman, Jr., for the respondent. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Special Trial *179 Judge: This case was assigned to Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code. [1] Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: YEAR
DEFICIENCY
SECTION 6653(b)(1)
SECTION 6653(b)(2)
1983
$ 1,773.00
$ 886.50
$ * 1984
666.00
333.00
**
After concessions, the issues for decision are: A. Whether petitioners are entitled to a deduction for charitable contributions made to the Liberty Hills Baptist Church for each of the taxable years 1983 and 1984 in excess of the amount allowed by respondent. B. Whether petitioners are entitled to charitable contribution deductions for taxable years 1983 and 1984 for payments made to the Wonder State Lodge, a local chapter of the Improved *180 Benevolent Protective Order of Elks of the World. C. Whether the mileage figures that petitioners used to determine their investment tax credit and automobile expenses for taxable years 1983 and 1984 are correct. D. Whether petitioners are entitled to a deduction under section 179 in 1983 for their automobile. E. Whether Mr. McFadden is liable for additions to tax under sections 6653(b)(1) and 6653(b)(2) for 1983 and 1984 due to an intentional understatement of his personal automobile mileage. FINDINGS OF FACT Some of the facts have been stipulated. This reference incorporates the stipulation of facts and attached exhibits. Petitioners Ralph and Constance McFadden resided in Little Rock, Arkansas, when they filed their petition in this case. Mr. McFadden is a certified public accountant and has been an employee of the Internal Revenue Service since 1979. He was an internal revenue agent in the Little Rock, Arkansas District during the taxable years in question. Mrs. McFadden was and continues to be a nurse in a Little Rock hospital. Liberty Hills Baptist Church
Mrs. McFadden has regularly attended the Liberty Hills Baptist Church (Liberty Hills). Petitioners *181 deducted payments made to the church in 1983 and 1984 as charitable contributions. On their 1983 income tax return, Mr. McFadden estimated his wife's average weekly church contribution and added an amount as miscellaneous contributions to allow for any monies that their children contributed. To calculate the church contributions for their 1984 income tax return, Mr. McFadden asked his wife how much she contributed to the church. She responded that she contributed $ 50 every two weeks. He did not review Mrs. McFadden's checks. Mrs. McFadden did not keep any record of her contributions, but relied solely on her memory as to the amount contributed. Petitioners were unable to obtain a receipt from the church for the contributions because the records were not available due to a subsequent dissolution of the church. Using their cancelled checks, petitioners substantiated $ 120.00 of the $ 1,150.00 deducted for alleged contributions to Liberty Hills on their 1983 income tax return. Similarly, petitioners substantiated $ 472.00 of the $ 1,500.00 deducted for alleged contributions to Liberty Hills on their 1984 tax return. Petitioners have substantiated $ 20.00 of the $ 40.00 of miscellaneous *182 donations claimed on their 1983 income tax return. Wonder State Lodge
During 1983 and 1984, Mr. McFadden was a member of the Wonder State Lodge (the Lodge). The Lodge is a local chapter of the Improved Benevolent Protective Order of Elks of the World, a charitable organization exempt from taxes under section 501(c)(8). A bar was maintained at the Lodge and members were allowed to bring their own alcoholic beverages. Parties were often held and non-members were allowed to attend. Although Mr. McFadden claims that he was not very active in the Lodge in 1983, he went there on a daily basis. Mr. McFadden became Treasurer of the Lodge in 1983 and was Treasurer for the remainder of the tax years in question. Members of the Lodge were expected to meet the monthly bills of the Lodge, including utility bills and mortgage payments. Petitioners deducted payments made to the Lodge as charitable contributions. They have submitted copies of checks payable to the Lodge totalling $ 315.17 for 1983 and $ 2,823.17 for 1984. Mr. McFadden's checks were not earmarked for any particular purpose, but were used as general purpose funds by the Lodge. Automobile Expenses
On March 11, 1983, petitioners *183 purchased a new 1983 Chevrolet Caprice (Chevrolet), having 6 miles on the odometer. Mr. McFadden used the Chevrolet in his business as an internal revenue agent during the remainder of 1983 and throughout 1984. Petitioners also used the Chevrolet for personal use during that period. Petitioners claimed 4,885 miles of business use and 8,200 miles of total use for the Chevrolet on Form 2106 of their 1983 income tax return. This represented a business-use percentage of approximately 60 percent. Petitioners claimed 4,500 miles of business use and 7,700 miles total use for the Chevrolet on Form 2106 of their 1984 income tax return. This represented approximately 58 percent business use. Mr. McFadden filed monthly travel vouchers with the Internal Revenue Service for taxable years 1983 and 1984, which reflected the business miles driven by him in the Chevrolet. To determine the total mileage on the automobile in 1983 and 1984, Mr. McFadden used an amount that would allow him the maximum investment tax credit and automobile expense deductions. Respondent determined total mileage for 1983 of 20,102 and 44,519 for 1984 based on records obtained from the State of Arkansas. The State *184 of Arkansas Application for Title, the March 1984 State of Arkansas Motor Vehicle Registration Notice, and the March 1985 State of Arkansas Motor Vehicle Renewal Notice reflect mileage amounts of 6, 25,402, and 49,819, respectively. From these annual mileage amounts, respondent calculated average monthly mileage amounts and multiplied these figures by the number of months the Chevrolet was used during 1983 and 1984. On March 28, 1985, Mr. McFadden met with Ms. Sandra Orr, respondent's tax auditor. Mr. McFadden produced documents to substantiate the 1983 business mileage of 4,885 but had no documents to verify the total mileage reported of 8,200. At that meeting, Ms. Orr accepted the total mileage reported by Mr. McFadden without verification and reduced the business-use percentage to correct a mathematical error. Ms. Orr also disallowed certain other automobile expenses for lack of substantiation and asserted the additions to tax for negligence for the lack of documentation. At a later meeting, Mr. McFadden brought repair receipts and gas purchase receipts to Ms. Orr to substantiate the automobile expense deductions. The documentation revealed mileage notations for 1983 and *185 1984 that understated the total mileage that petitioners had reported on their tax returns. After receiving the automobile repair expense documentation, Ms. Orr reopened the examination of petitioners' report of total mileage, business-use percentage, and the section 179 deduction amount. Mr. McFadden failed to explain the disparity between the total mileage figures reported on the returns and the documentary proofs of actual mileage. Ms. Orr then changed the additions to tax recommendation from negligence to civil fraud. OPINION A. Liberty Hills Baptist Church
Contributions made to organizations created and operated exclusively for religious and charitable purposes may be deducted. Sections 170(a) and 170(c)(2). Respondent determined that petitioners are entitled to charitable contributions for the payments to Liberty Hills, but only for the amount that petitioners have substantiated. Petitioners bear the burden of proving that contributions were made in excess of this amount. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners did not provide the records necessary to qualify the alleged contribution amounts for the charitable contribution *186 deduction. Mrs. McFadden estimated her contributions to the church. A minister from Liberty Hills testified that Mrs. McFadden regularly attended church, but he had no documentary proof to establish an amount contributed. Mrs. McFadden also testified, but she was unable to reasonably reconstruct any cash contributions. We find that petitioners are allowed to deduct the amounts of $ 140.00 and $ 472.00 for the years 1983 and 1984, respectively which they have substantiated as charitable contributions. B. Wonder State Lodge
Charitable contributions to fraternal organizations may be deducted, but only if the contributions are used exclusively for charitable purposes. Section 170(c)(4). Respondent disallowed the charitable deduction to the Lodge concluding that petitioners had failed to demonstrate that the payments were used exclusively for charitable purposes. Petitioners bear the burden of proof. Rule 142(a). Elks Lodges, while providing charitable services to their community, typically offer social activities to their members. Marshall v. Elks Club of Huntington, Inc.,444 F. Supp. 957 (S.D. W.Va. 1977). Although Mr. McFadden claimed that he was not *187 active in the Lodge during 1983, the record shows that he went to the Lodge almost every day. In fact, he was Treasurer that year and continued to be for the taxable years in question. The Lodge had a beverage bar and members brought alcoholic beverages to the Lodge for social functions. Mr. McFadden's numerous visits to the Lodge cannot be described as related to fund raising events for charitable purposes. Mr. McFadden's checks to the Lodge were not earmarked for charitable programs, but were used for general purpose funds. Mr. McFadden's checks were meant to meet daily operating expenses such as utility bills. Some of these checks were used to make emergency payments on the Lodge's building note. Petitioners have not demonstrated that the Lodge used their contributions exclusively for charitable purposes or that the activities at its building were for charity. Accordingly petitioner's payments to the Lodge do not qualify under section 170(c)(4) for charitable deductions on their 1983 and 1984 income tax returns. C. Automobile Mileage
On March 11, 1983, petitioners purchased the Chevrolet. It was used during the remainder of 1983 and throughout 1984 for both business *188 and personal purposes. Mr. McFadden used the Chevrolet for his duties as an internal revenue agent in the Little Rock, Arkansas District. On their 1983 tax return, petitioners claimed that the Chevrolet was used approximately 60 percent for business. Petitioner's 1984 return indicated that the automobile continued to be used approximately 58 percent for business throughout that taxable year. While Mr. McFadden's travel vouchers approximate the amount of reported business usage for the Chevrolet, petitioners failed to produce records to verify the total mileage readings reflected on the 1983 and 1984 income tax returns. Annual total mileage figures, however, were obtained from the Arkansas Motor Vehicle Registration records. The State's records reflect the car's mileage in March 1984 and March 1985. From the annual mileage amounts provided by the State, respondent calculated average monthly mileage amounts and then multiplied these figures by the number of months the Chevrolet was used in 1983 and 1984. Respondent determined total mileage figures for 1983 to be 20,102 and 44,519 miles for 1984. Respondent's total mileage calculations were supported by the mileage amounts *189 reflected on repair invoices and Mr. McFadden's gasoline credit card purchase tickets. Petitioners have conceded that the total mileage figures in respondent's notice of deficiency are reasonable. The business-use percentages that respondent calculated will be used to determine the automobile expense and investment tax credit adjustments and in applying the 50 percent test for the deduction under section 179. D. Section 179-Election to Expense Certain Depreciable Assets
During 1983, petitioners claimed various automobile expense deductions including the expense deduction under section 179 based on a business-use percentage of approximately 60 percent. Respondent calculated the business-use percentage to be 22 percent in 1983. Petitioners have conceded that respondent's determination is correct. For taxable year 1983, section 179 allows a taxpayer to elect to expense the cost of certain property acquired for use in a trade or business, including automobiles, in an amount not to exceed $ 5,000 in the year the property was placed in service. [2]Sections 1.179-1(a) and 1.179-1(b), Income Tax Regs. If the property was not used exclusively for business purposes, the deduction *190 is the fraction of the property's cost determined by its business-use percentage up to the $ 5,000 limitation provided that more than 50 percent of the property's use in the taxable year the property is placed in service is for trade or business purposes. Section 1.179-1(d), Income Tax Regs.
Section 179(d)(10) provides that any benefit derived from expensing section 179 property is subject to recapture if the property is not used predominantly in a trade or business at any time before the close of the second taxable year following the taxable year in which it is placed in service by the taxpayer. On January 5, 1987, section 1.179-1(e)(2), Income Tax Regs., was adopted which defined "predominantly" to mean that the property must be used in a trade or business more than 50 percent of the time. The regulations were adopted, however, after petitioners had filed their income tax returns for the years in issue. Petitioners argue that they are entitled to a deduction under section 179. They contend that they *191 were justified in relying on 22 percent as a predominant amount and that it should be used as the basis for recapture. We reject petitioners' contention. Even though the term was not defined precisely in the statute or the legislative history, the courts have previously held "predominant" to be synonymous with "basic," "dominant," "primary," and "substantial." Lemmen v. Commissioner,77 T.C. 1326, 1340 (1981). We need not determine an exact amount associated with the term "predominant," but find that it must mean an amount substantially greater than 22 percent. Accordingly, petitioners are not entitled to the section 179 deduction for the Chevrolet. E. Additions to Tax
Respondent determined that Mr. McFadden is liable for additions to tax under sections 6653(b)(1) and 6653(b)(2) for 1983 and 1984. Respondent contends that Mr. McFadden fraudulently and intentionally understated the personal and total mileage figures on his 1983 and 1984 income tax returns to increase the business-use percentage for his Chevrolet, claim the maximum $ 5,000 section 179 deduction in 1983, and avoid recapture of this deduction in 1984. Mr. McFadden claimed that the Chevrolet *192 was driven 8,200 total miles in 1983, of which 4,885 miles were claimed as business miles and 3,315 were personal miles. This allowed Mr. McFadden to claim a business-use percentage of 60 percent. In 1984, Mr. McFadden reported 7,700 total miles, of which 4,500 miles were business miles and 3,200 were personal miles. This allowed Mr. McFadden to report a business-use percentage of 58 percent. In fact, Mr. McFadden drove approximately 24,000 miles per year from the time he bought the Chevrolet in March 1983 through the end of 1984. Accordingly, he understated his personal miles for 1983 by approximately 11,902 miles and by approximately 16,717 miles for 1984. We must decide whether the understatement of personal and total mileage was intentional and part of a fraudulent effort to qualify for the $ 5,000 deduction under section 179 and to avoid the recapture provision. Respondent contends that Mr. McFadden knew of the automobile's true mileage during this period and that his actions were fraudulent. Mr. McFadden claims that he misread the odometer on the Chevrolet. In addition, he claims that he was in a state of emotional distress and was not capable of competently completing *193 the income tax returns. He claims that he may have been negligent, but that he did not intentionally claim false amounts. To prove fraud, respondent must produce clear and convincing evidence that some part of an underpayment of tax for that year is due to fraud. Section 7454(a); Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Stone v. Commissioner,56 T.C. 213, 220 (1971). The presence of fraud is a factual question to be determined by an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The proof of fraud may be allowed to rest upon circumstantial evidence and reasonable inferences properly drawn from the record because direct proof of fraudulent intent is rarely available. Spies v. United States,317 U.S. 492 (1943); Stone v. Commissioner, supra at 223-224. Fraud, however, is never presumed. Beaver v. Commissioner,55 T.C. 85 (1970). We must determine whether Mr. McFadden had an actual specific intent to evade tax believed to be due and owing by conduct intended to conceal, *194 mislead, or otherwise prevent collection of tax. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). We do not believe that Mr. McFadden mistakenly misread the odometer when claiming the deduction for the automobile, but that he intentionally falsified his mileage records. The record is clear that petitioners' personal use of the automobile during 1983 and 1984 was substantial. We cannot believe that Mr. McFadden was not aware of such extensive personal use. Mr. McFadden is a certified public accountant and a revenue agent for the Internal Revenue Service. He was acutely aware of the need to keep accurate records of his business mileage to be reimbursed and certainly knew the importance of substantiating deductions. It is evident that Mr. McFadden was under some stress and had an alcohol dependency. There is no indication, however, that either was severe. He was able to work and to engage in normal social activities. We conclude that Mr. McFadden knew the actual total mileage of the car when he filed his Federal income tax returns, yet intentionally and fraudulently claimed false mileage to take advantage of the additional expense deduction *195 under section 179. Accordingly, we sustain respondent's determination of the addition to tax under section 6653(b)(1) and under section 6653(b)(2) on that portion of the underpayment attributable to the adjustments for automobile expenses. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the years in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest due on $ 1,373.00 ** 50 percent of the interest due on $ 224.00↩
2. For property placed in service after 1986, the dollar limitation was increased to $ 10,000 under section 202(a). Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755.↩